Mr. Justice Montgomery
delivered the opinion of the Court:
In this certiorari proceeding we are asked to “ quash and annul” certain “ alleged special assessments,” and tax-lien certificates whieh rest upon lots numbered consecutive^7 23 to 32, both inclusive, in square numbered 651, all of which lots front eastward on South Capitol street, between M and N streets, in this city.
The record discloses that at some time prior to June 20, 1874, repairs and improvements were being made upon First street, northwest, and among other points on said street between and M and N.
This work was being performed under a contract theretofore made by one Burch with the Board of Public Works.
*97 At that date the act of Congress which abolished the Board, and provided for Commissioners in its stead, was approved. 18 Stat. at Large, 116.
This act declared that the Commissioners should “make no contract * * * other than such * * * as might be necessary * * * to the protection and preservation of improvements [then] existing or commenced and not completed.”
June 9, 1876, a contract was entered into between the ‘ Commissioners, on behalf of the District, and Mr. Burch, in which it was agreed that the contractor should “ complete the work * * * of First street” at.the points other than the one between M and N streets, and that he should also “set the curbs” and lay the pavements on the carriageway of South Capitol street between M and N streets south, in lieu- of similar work, which was and has been done on First street west between these points.”-
This work was completed during the same summer. At that time Messrs. Windsor & Ford were, and ever since have been, the owners of the lots above mentioned.
In December, 1876, the assessments complained of, which aggregated $918.12, and were all for carriage-way, were laid against these lots, of which levy due notice was given.
Petitioners were not satisfied with this levy, and on the 18th day of July, 1878, in pursuance of the act of Congress, approved on the 19th day of the preceeding month (20 Stat. at Large, 166), they complained to the Commissioners and requested a “revision of the assessment against said property,” which revision was soon thereafter, at what precise, date does not appear, attempted. This “revision” exhibits a total of $158.71 for sidewalk, of $152.13 for curbing, and $549.30 for carriage-way; aggregating, as so revised, $882.17.
It is urged by petitioner’s counsel that the contract of June 9, 1876, was not only unauthorized, but that it was expressly forbidden by the Act of June 20, 1874.
That the original assessment was therefore invalid, and *98 that the so-called “revision” was void because of no original valid levy upon which it might be predicated, because of omissions and informalities, and because it included items other than an assessment for “ carriage-way,”
Counsel for respondent insists, in reply:
First. That the work which was so done on South Capitol street, between M and N, was really a completion of the work theretofore begun on First street; and
Second. That even if it were not, petitioners are estopped from complaining of an assessment which they themselves asked to be revised, and from complaining of the revision so induced.
The Act of June 20, 1874, forbade the making of any contracts for such improvements as are involved here “other than such * *. * as might be necessary , * * * to the protection and preservation of improvements [then] existing, or commenced and not completed.”
It is not claimed that the work on South Capitol street was “necessary to the protection and preservation of anj^ antecedent work, nor was , it a continuation of any work existing or commenced and not completed.” The old work was abandoned and the work on South Capitol street was a new, another and different undertaking.
Indeed, the contract itself declares that it was “in lieu of similar work which was to have been done on First street.” We think, therefore, that the contract for the performance of this work on South Capitol street was unauthorized and void.
It must follow that the levy of the assessment was invalid.
Now, are petitioners at liberty to contest the validity of the “revision.” We think they are.
The original assessment was not merely irregular and informal — it was actually void. Being void, it could not be “revised and corrected,” for there was nothing to revise. It is as unwarranted in law as though petitioners had invited, a levy, as a mere gratuity, and one had thereupon been laid.
The assessment cannot be maintained, and the proceedings must be quashed. Judgment accordingly.